**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **KATRINA A.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 18-1070** |
| **v.** | * | |
| | * | |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| | ************ | |

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Katrina A. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 20).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 20) is

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

On November 9, 2016, Administrative Law Judge ("ALJ") Raghav Kotval held a hearing in Baltimore, Maryland, where Plaintiff and a vocational expert ("VE") testified. R. at 32-83. The ALJ thereafter found on January 30, 2017, that Plaintiff was not disabled from her alleged onset date of disability of May 2, 2014, through the date of the ALJ's decision. R. at 12-31. In so finding, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), meaning she can lift, carry, push, and pull ten pounds occasionally, less than ten pounds frequently, sit for six hours total per day, and stand or walk for two hours total per day. However, she can only sit for fifty minutes at a time before needing to stand and she can only stand or walk for twenty minutes at a time before needing to sit. Additionally, [Plaintiff] can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl but can never climb ladders and scaffolds. Furthermore, she can never be exposed to unprotected heights, moving mechanical parts, and extreme heat.

R. at 20-21. In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a customer service representative and could perform other work, such as a telemarketer, order clerk, or dispatcher. R at 24-26. The ALJ thus found that Plaintiff was not disabled from May 2, 2014, through January 30, 2017. R. at 26.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on April 13, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[4] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9,

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 15-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5-6. In particular, she contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 6. Plaintiff further argues that the ALJ failed to account in the RFC assessment for her fatigue, migraine headaches, and limitations in her upper extremities. *Id.* at 6-8. Plaintiff finally argues that the ALJ erroneously evaluated her subjective complaints. *Id.* at 9-11. For the following reasons, Plaintiff's contentions are unavailing.

## A. ALJ's Credibility Determination

The Court turns first to Plaintiff's argument that substantial evidence does not support the ALJ's assessment of her credibility. The ALJ reviewed Plaintiff's testimony in his decision:

> In [Plaintiff's] application for disability benefits, she alleged thoracic back pain, neck injury, nerve damage, back injury, limited movement, and arm problems limited her ability to work. At the hearing, [Plaintiff] testified that she could not work full time because she would get too fatigued and could not sit or stand for long periods. However, she started taking twelve credit hours of online school in August 2016, which she can do mostly on her own time, and has worked part time since October 2015 but has difficulty completing two straight hours. Her multiple sclerosis symptoms include hip pain, numbness in her right leg and right hand, and low back pain radiating into her lower extremities every five to six months. [Plaintiff] experiences intermittent tingling and weakness in her hand, for which she has received in home steroid infusions. Additionally, for the past few months [Plaintiff] has experienced fatigue three or four days a week where she has to [lie] down for most of the day, which has been getting progressively worse. She has participated in physical therapy[,] but it did not help relieve her symptoms. [Plaintiff] only leaves her house about twice a week, needs assistance with grocery bags, and cooks two or three times a week. She uses a cane to balance about twice a month and thought she could walk for ten minutes on a level [surface], stand or walk combined for fifteen to twenty minutes at one time, sit about forty-five to fifty minutes before needing to stand due to hip pain, and lift and carry about ten pounds for five feet. Furthermore, [Plaintiff] is very bothered by the heat and the sun.

R. at 21-22 (citation omitted). Plaintiff also testified that she suffered from migraine headaches once or twice a month for about a week. R. at 60-61. She testified that "once it gets worse I'm down" for "three days." R. at 61. According to Plaintiff, the ALJ failed to explain which of her statements to believe and which to discredit. Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 15-1 (citing *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015)). Plaintiff contends that the ALJ considered the type of activities that she could perform without also considering the extent to which she could perform them. *Id.* at 11 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). She further maintains that the ALJ did not consider the other limitations to which she testified. *Id.* For the reasons discussed below, Plaintiff's arguments are unavailing.

> Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis v. Berryhill*, 858 F.3d 858, 865-66 (4th Cir. 2017) (citations omitted); *see* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 22. As the Commissioner points out, the ALJ found that Plaintiff "is currently working part time and taking twelve credit hours of online courses, which suggest she would be capable of full time work. Additionally, [Plaintiff's] treatment notes document no greater than moderate

clinical findings and relatively conservative medical treatment considering the severity of her allegations." R. at 22.

"[I]t is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the plaintiff." *Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015); *see Sharp v. Colvin*, 660 F. App'x 251, 259 (4th Cir. 2016) ("The ALJ was permitted to make this determination that [the claimant's] treatment was conservative, and that her course of treatment supported a conclusion that she was able to maintain a routine work schedule." (citing *Wall v. Astrue*, 561 F.3d 1048, 1058-60, 1069 (10th Cir. 2009))). School attendance also may constitute evidence that a claimant is capable of work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). As for Plaintiff's part-time work,

> [i]t may be true that part-time work does not equate to a finding that a claimant can work full time. However, part-time work is nonetheless indicative of an ability to work where a claimant claims that he or she is unable to work at all. Moreover, even part-time work that does not rise to the level of substantial gainful activity may be considered by an ALJ in determining whether a claimant is able to do more work than he or she is alleging. Thus, although it may be true that [Plaintiff's] part-time employment, without more, does not suggest [she] can engage in full-time employment, . . . this work was one of several factors upon which [the ALJ] based the credibility determination.

*Hitchcock v. Colvin*, No. 4:14-CV-00154-FL, 2015 WL 5725662, at *9 (E.D.N.C. Aug. 12, 2015) (citations omitted), *report and recommendation adopted*, No. 4:14-CV-154-FL, 2015 WL 5725672 (E.D.N.C. Sept. 30, 2015); *see Hill v. Colvin*, Civil No. DKC 15-1027, 2016 WL 3181762, at *10 (D. Md. June 8, 2016) (citing, *inter alia*, *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004)), *report and recommendation adopted*, Civil Action No. DKC 15-1027, 2016 WL 4269094 (D. Md. Aug. 15, 2016). The ALJ here noted Plaintiff's testimony that she worked twelve to fifteen hours per week at home as a customer service representative, although earnings records indicated that Plaintiff likely worked a greater number of hours. R. at 17, 43-44.

Plaintiff also testified that her twelve credit hours of online coursework was a full-time load.  R. at 46.  The ALJ further noted the third-party function report from Plaintiff's husband that related her daily activities (R. at 23).  *See Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) ("[T]he ALJ cited [Plaintiff's] daily activities for purposes of the credibility determination and not as examples of the functions [she] could perform for an entire day.").  Thus, contrary to Plaintiff's assertion, the ALJ considered the extent to which she could perform her daily activities.  Because "the ALJ cited adequate evidence from the record to support his conclusion that [Plaintiff's] statements were not entirely credible," Plaintiff's contention that substantial evidence does not support the ALJ's determination of her credibility is without merit.  *Id.* at 171 n.3.

**B.    ALJ's RFC Assessment**

The Court next addresses Plaintiff's contention that the ALJ erred in assessing her RFC.  Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 15-1.  SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or

uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).

Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff first contends that, by failing to set forth a narrative discussion while assessing her RFC, the ALJ did not comply with SSR 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 3-6, ECF No. 15-1. In assessing her RFC, however, the ALJ considered the treatment records, opinion evidence, hearing testimony, and her credibility (R. at 21-24). *See Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-2712, 2014 WL 457746, at *2 (D. Md. Jan. 31, 2014) ("[T]he ALJ provided approximately a four-page written narrative on her RFC alone, in which he summarized [the claimant's] hearing testimony, made a credibility determination, reviewed both the treatment records and the opinion evidence, and noted observations from the hearing. [The claimant's] boilerplate argument is therefore inapplicable in this case." (citation omitted)); *see also Ladda*, 749 F. App'x at 172 ("[T]he ALJ in this case used evidence from the record to explain his finding that [the claimant] was capable of light work. For example, the ALJ noted

that [the claimant] claimed that he could walk for only ten to fifteen minutes at a time and could not lift ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the claimant], [the claimant's] treating physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the claimant] was limited to light work was supported by substantial evidence."). Plaintiff's contention in this regard thus is unavailing.

Plaintiff further contends that the ALJ failed to explain how he accounted for her fatigue in the RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 15-1. As the Commissioner points out, however, M. Gumbinas, M.D., a state agency medical consultant, opined in January 2015 that Plaintiff should avoid concentrated exposure to hazards because of her fatigue. R. at 115, 127. The ALJ found that this environmental limitation was "generally consistent with [Plaintiff's] treatment notes, allegations, and other evidence of record." R. at 24 (citing function reports completed by Plaintiff and her husband in July 2014). The ALJ thus included an environmental limitation in the RFC assessment that Plaintiff "can never be exposed to unprotected heights, moving mechanical parts, and extreme heat." R. at 21. Plaintiff's argument regarding the ALJ's consideration of her fatigue thus is without merit.

Plaintiff also contends that the ALJ failed to address her limitations with respect to her hands because "[t]he record reflects that [she] has repeatedly been found to have[] numbness, tingling, weakness, and diminished reflexes in her upper extremities, bilaterally." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 15-1. According to Plaintiff, the ALJ failed to include any limitation in his RFC assessment related to her use of her upper extremities, without explanation. *Id.* The ALJ, however, did address Plaintiff's numbness, tingling, and weakness in her upper

extremities (R. at 21-23) and assessed Plaintiff's capacity to lift, carry, push, and pull (R. at 20), which relates to that physical limitation. *See Ladda*, 749 F. App'x at 173. Plaintiff's argument thus is unavailing.

Finally, Plaintiff asserts that the ALJ erred in not finding that her migraine headaches were a severe impairment at step two. Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 15-1. Plaintiff testified, however, that her migraine headaches were related to her multiple sclerosis (R. at 60), which the ALJ found to be a severe impairment (R. at 18). In any event, Plaintiff

> misunderstands the purpose of step two in the analysis. Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (alteration in original) (citations omitted). "Moreover, step two was decided in [Plaintiff's] favor . . . . [She] could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand." *Id.* at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)); *accord Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam). Plaintiff's contention that the ALJ erred at step two by failing to determine that her migraine headaches were a severe impairment thus is without merit.

Plaintiff's argument that remand is warranted because the ALJ failed to address in the RFC assessment the frequency and duration of her migraine headaches also fails. Pl.'s Mem. Supp. Mot. Summ. J. 6-8, ECF No. 15-1. Plaintiff's treatment notes indicate that in June 2014 she reported a one-year history of moderate headaches that were "not getting worse" and lasted

one hour. R. at 373. In February 2015, Plaintiff was taking Motrin for a migraine headache. R. at 474. In late April 2015, she reported having "worsening migraines" at least every other day that usually lasted for the entire day, so amitriptyline was prescribed. R. at 687-88. In May 2015, however, it was noted that her migraines "are improved as she uses tramadol as needed, which she has ended up using twice since her last appointment . . . 2 weeks ago. As a result, she is holding off on starting amitriptyline." R. at 683. In June 2015, Plaintiff was directed to take tramadol no more than three times per week for her migraine headaches. R. at 621.

Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). As noted above, the ALJ found that Plaintiff's daily activities belied her allegations of disabling limitations. "The burden of proof and production rests on Plaintiff to show limitations." *Bryant v. Colvin*, No. 1:13-CV-1994 DCN, 2014 WL 3670842, at *13 (D.S.C. July 22, 2014) (citing *Pass*, 65 F.3d at 1203). She, however, "has failed to demonstrate that her migraine headaches 'significantly limit' her ability to work." *Haynes v. Astrue*, No. 3:11CV693-CSC, 2012 WL 2814302, at *4 (M.D. Ala. July 10, 2012); *see Blankenship v. Berryhill*, No. 1:17-CV-1359-LO-MSN, 2018 WL 4610651, at *5 (E.D. Va. Aug. 31, 2018) ("Despite having the burden of showing that his migraines are severe, Plaintiff's medical records and self-reporting to his doctors fail to demonstrate that the migraines 'significantly limit [his] physical or mental ability to do basic work activities.'" (alteration in original) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c))), *report and recommendation adopted*, No. 1:17-CV-1359, 2018 WL 4609941 (E.D. Va. Sept. 24, 2018); *Bryant*, 2014 WL 3670842, at *13 ("While the medical evidence includes a reference to 'some headaches' in November 2008 and more frequent and worsening headaches in January 2009, there is no other mention of

headaches and no evidence to corroborate Plaintiff's claim that her headaches lasted up to three days." (citations omitted)). Rather, "[t]he only evidence that [Plaintiff] points to that suggests that her migraine headaches compromise her ability to work is her own testimony, which the ALJ discounted." *Haynes*, 2012 WL 2814302, at *4. Thus, any error by the ALJ in failing to address Plaintiff's migraine headaches was harmless. *See Bryant*, 2014 WL 3670842, at *13 (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## V

## <u>Conclusion</u>

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.


Date: August 28, 2019

_____/s/_____
Thomas M. DiGirolamo
United States Magistrate Judge